UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JEROME ANDERSON, <br><br> Plaintiff, <br><br> v. <br><br> MSG NETWORKS INC., JOSEPH M. COHEN, JOSEPH J. LHOTA, JOEL M. LITVIN, JOHN L. SYKES, JAMES L. DOLAN, AIDAN J. DOLAN, KRISTIN A. DOLAN, PAUL J. DOLAN, THOMAS C. DOLAN, WILLIAM J. BELL, STEPHEN C. MILLS, HANK J. RATNER, and BRIAN G. SWEENEY, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Jerome Anderson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against MSG Networks Inc. ("MSGN" or the "Company") and the members of MSGN's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which MSGN will be acquired by Madison Square Garden Entertainment Corp. ("MSG Entertainment") through its subsidiary Broadway Sub, Inc. ("Merger Sub") (the "Proposed

Transaction").[1]

2. On March 26, 2021, MSGN and MSG Entertainment issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 25, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, MSGN shareholders will receive 0.172 shares of MSG Entertainment Class A or Class B common stock for each share of MSGN Class A or Class B common stock they own (the "Merger Consideration").

3. On June 4, 2021, MSGN filed a Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that MSGN stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, essential and critical to the decision to approve the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as MSGN stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated.

---

[1] Non-party MSG Entertainment is a Delaware corporation with its principal executive offices located at Two Pennsylvania Plaza, New York, New York, 10121. MSG Entertainment's common stock trades on the New York Stock Exchange under the ticker symbol "MSGE." Non-party Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of MSG Entertainment.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of MSGN.

10. Defendant MSGN is a Delaware corporation, with its principal executive offices located at 11 Pennsylvania Plaza, New York, NY 10001. MSGN's shares trade on the New York Stock Exchange under the ticker symbol "MSGN."

11. Defendant Joseph M. Cohen ("Cohen") has been a director of the Company since June 1, 2020.

12. Defendant Joseph J. Lhota ("Lhota") has been a director of the Company since December 15, 2016. Defendant Lhota was previously Executive Vice President ("EVP") of the Company from 2010 to 2011. Defendant Lhota has also served as a director of MSG Entertainment since April 2020.

13. Defendant Joel M. Litvin ("Litvin") has been a director of the Company since September 30, 2015.

14. Defendant John L. Sykes ("Sykes") has been a director of the Company since August 5, 2015. Defendant Sykes has also served as a director of MSG Entertainment since April 2020.

15. Defendant James L. Dolan ("James Dolan") has been Executive Chairman and a director of the Company since July 29, 2009. Defendant James Dolan has also served as a director and the Executive Chairman and Chief Executive Officer ("CEO") of MSG Entertainment since November 2019.

16. Defendant Aidan J. Dolan ("Aidan Dolan") has been a director of the Company since June 1, 2020.

17. Defendant Charles F. Dolan ("Charles Dolan") has been a director of the Company since July 29, 2009. Defendant Charles Dolan has also served as a director of MSG Entertainment since April 2020.

18. Defendant Kristin A. Dolan ("Kristin Dolan") has been a director of the Company since April 9, 2018. Defendant Kristin Dolan has also served as a director of MSG Entertainment since April 2020.

19. Defendant Paul J. Dolan ("Paul Dolan") has been a director of the Company since September 30, 2015. Defendant Paul Dolan has also served as a director of MSG Entertainment since April 2020.

20. Defendant Thomas C. Dolan ("Thomas Dolan") has been a director of the Company since February 9, 2010. Defendant Thomas Dolan has also served as a director of MSG Entertainment since April 2020.

21. Defendant William J. Bell ("Bell") has been a director of the Company since September 30, 2015.

22. Defendant Stephen C. Mills ("Mills") has been a director of the Company since October 7, 2020.

23. Defendant Hank J. Ratner ("Ratner") has been a director of the Company since September 30, 2015.

24. Defendant Brian G. Sweeney ("Sweeney") has been a director of the Company since February 9, 2010. Defendant Sweeney has also served as a director of MSG Entertainment since April 2020.

25. Defendants identified in paragraphs 10-24 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

26. On March 26, 2021, MSGN and MSG Entertainment jointly announced in relevant part:

> NEW YORK--Madison Square Garden Entertainment Corp. ("MSG Entertainment") (NYSE: MSGE) and MSG Networks Inc. ("MSG Networks") (NYSE: MSGN) today announced they have reached a definitive agreement for MSG Entertainment to acquire MSG Networks in an all-stock, fixed exchange ratio transaction.
>
> The merger is expected to be tax-free for both MSG Entertainment and MSG Networks and their stockholders. Upon the closing of the transaction, MSG Networks stockholders would receive 0.172 shares of MSG Entertainment Class A or Class B common stock for each share of MSG Networks Class A or Class B common stock they own. The exchange ratio is approximately 4% above the ratio of the unaffected closing stock prices of the two companies on March 10, 2021, the last trading day before a press report speculated on a potential transaction.
>
> This transaction would create a leading entertainment and media company with a more diversified revenue base that would be well positioned to deliver innovative experiences across all of its assets. The combined company would have a stronger liquidity position to support its live entertainment business, which following the shutdown of its venues due to the pandemic, is now on a path back to normal operations. In addition, the new company would have enhanced financial flexibility to fund current growth initiatives, including its planned state- of-the-art venue in Las Vegas, MSG Sphere at The Venetian, as well as future opportunities across both entertainment and media.
>
> With the acquisition of MSG Networks, MSG Entertainment anticipates it would capture more of the emerging revenue opportunity related to the potential expansion of legalized sports gaming in its market. The combination of the companies' media, digital and venue assets creates a powerful platform

for potential sports gaming partners, which is expected to generate significant incremental revenue in the years ahead.

MSG Entertainment President Andrew Lustgarten said: "MSG Entertainment is actively executing a plan designed to grow the Company beyond its established collection of assets into one that is pioneering the next generation of entertainment. We have always believed in the value of live sports and look forward to welcoming MSG Networks back into the fold as part of a transaction that we are confident would enhance our financial flexibility and set the stage for continued growth and value creation."

MSG Networks President and CEO Andrea Greenberg said: "We anticipate significant benefits from rejoining MSG Entertainment, including creating a combined company with greater diversification and resources. This would, in turn, help drive new innovative opportunities across both the entertainment and media businesses, ultimately creating significant value for our collective shareholders."

In addition to forming a diversified company with enhanced financial flexibility, it is anticipated that the combined company would realize meaningful tax efficiencies. As of December 31, 2020, MSG Entertainment had a federal net operating loss (NOL) of approximately $250 million, primarily due to the temporary shutdown of its venues as a result of COVID-19. Furthermore, MSG Entertainment expects to accelerate the depreciation of significant components of the capital investment for MSG Sphere in Las Vegas in calendar 2023, which is when the venue is expected to open. As a result of this transaction, the combined company would be able to more efficiently utilize MSG Entertainment's existing NOL, as well as future bonus depreciation related to MSG Sphere in Las Vegas, to offset the taxable income of all of its businesses, including MSG Networks, which today is a full state and federal income tax cash payer.

MSG Networks is a leader in sports content development and distribution that generates significant revenue, adjusted operating income, and free cash flow. For fiscal year 2020, MSG Networks generated revenue of $685.8 million, operating income of $295.0 million, adjusted operating income of $321.4 million, net cash provided by operating activities of $210.0 million, and free cash flow of $207.2 million. The media company's two networks, MSG Network and MSG+, operate in the nation's number one media market, the New York DMA, as well as other portions of New York, New Jersey, Connecticut and Pennsylvania. The networks deliver exclusive live local games of the New York Knicks, New York Rangers, New York Islanders, New Jersey Devils and Buffalo Sabres, as well as significant coverage of the New York Giants and Buffalo Bills.

While MSG Networks continues to operate in an evolving media landscape, the Company reported for its fiscal 2021 second quarter a sequential improvement in its year-over-year rate of subscriber decline, which has continued to improve so far during the fiscal 2021 third quarter. And with the 2020-21 NBA and NHL seasons, MSG Networks is currently enjoying significant year-over-year increases in viewership for both its linear networks and MSG GO streaming app, which helps drive the Company's advertising revenue.

6

MSG Entertainment's portfolio features iconic venues, including Madison Square Garden; production assets such as the Radio City Rockettes and the Christmas Spectacular and a majority interest in Tao Group Hospitality.

MSG Entertainment is actively pursuing its vision for MSG Sphere – new, state- of-the-art venues that will reinvent the entertainment experience. Construction is well underway on MSG Sphere in Las Vegas, and the Company continues to pursue its plans for an additional MSG Sphere in London, pending necessary approvals.  The definitive agreement was exclusively negotiated and unanimously approved by Special Committees of MSG Entertainment's and MSG Networks' boards, both of which are comprised entirely of independent directors. The agreement  was also unanimously approved by the Boards of Directors of both MSG Entertainment and MSG Networks.

The transaction is subject to approval by a majority of the combined voting power of the outstanding shares of MSG Networks Class A common stock and Class B common stock. MSG Entertainment's issuance of its common stock in the transaction is subject to approval by a majority of the combined voting power of the votes cast by the holders of shares of MSG Entertainment Class A common stock and Class B common stock and, separately, the issuance of MSG Entertainment Class B shares must be approved by the holders of not less than 66 2/3% of the voting power of the outstanding shares of MSG Entertainment Class B common stock. The Special Committee of the Board of Directors of MSG Networks, and the full board, based on the recommendation of the MSG Networks Special Committee, have each recommended that MSG Networks stockholders adopt the merger agreement.  The Special Committee of the Board  of Directors of MSG Entertainment, and the full Board, based on the recommendation of the MSG Entertainment Special Committee, have each recommended that MSG Entertainment stockholders approve the issuance of MSG Entertainment common stock required for the transaction.

The holders of all of the outstanding shares of MSG Networks Class B common stock and MSG Entertainment Class B common stock, who have sufficient votes to approve the transaction, have entered into voting agreements pursuant to which they have agreed to vote all of the MSG Networks Class B common stock and MSG Entertainment Class B common stock in favor of the adoption of the merger agreement and the issuance of MSG Entertainment common stock required for the transaction, respectively.

The transaction, which is also subject to customary closing conditions, is expected to be completed during the third quarter of calendar 2021. Upon the closing of  the transaction, a current director of MSG Networks elected by the holders of its Class A common stock would be appointed as a director of MSG Entertainment.

Moelis & Company LLC and The Raine Group are serving as independent financial advisors and Wachtell, Lipton, Rosen & Katz is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Entertainment. LionTree Advisors LLC and Morgan Stanley & Co. LLC are serving as independent financial advisors and Davis Polk & Wardwell LLP is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Networks. Debevoise & Plimpton LLP is serving as legal counsel to the Dolan family.

**The Proxy Statement Contains Material Misstatements or Omissions**

27. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to MSGN's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal

28. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) MSGN's and MSG Entertainment's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by LionTree Advisors LLC ("LionTree") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and (b) Morgan Stanley's potential conflicts of interest.

*Material Omissions Concerning MSGN's and MSG Entertainment's Financial Projections and LionTree's and Morgan Stanley's Financial Analyses*

29. The Proxy Statement omits material information regarding the Company's and MSG Entertainment's financial projections, including the line items underlying (a) adjusted operating income ("AOI") for both MSGN and MSG Entertainment; (b) free cash flow from operations for MSGN; and (c) free cash flow for MSG Entertainment.

30. The Proxy Statement also describes LionTree's and Morgan Stanley's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of LionTree's and Morgan Stanley's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, MSGN's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on LionTree's and Morgan Stanley's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

31. With respect to LionTree's and Morgan Stanley's *Selected Publicly Traded*

*Companies Analysis* for MSGN and *Selected Publicly Traded Companies Analysis* for MSG Entertainment, the Proxy Statement fails to disclose the individual multiples and financial metrics for the each of the companies observed in the analyses.

33. With respect to LionTree's and Morgan Stanley's *Discounted Cash Flow Analyses* of MSGN and MSG Entertainment, the Proxy Statement fails to disclose: (a) quantification of the terminal values of MSGN as of December 31, 2025; and (b) quantification of the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0% for MSGN and 7.25% to 8.25% for MSG Entertainment utilized by LionTree and 7.29% to 8.49% for MSG Entertainment utilized by Morgan Stanley.

33. With respect to LionTree's and Morgan Stanley's research analysts' price targets analysis, the Proxy Statement fails to disclose the specific price targets observed as well as the sources thereof.

34. The omission of this information renders the statements in the "Unaudited Prospective Financial Information" and "Summary of LionTree and Morgan Stanley Financial Analyses" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest**

35. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley.

36. The Proxy Statement fails to disclose and quantify the amount of compensation received by Morgan Stanley from MSGN and AMC Networks Inc. (an affiliate of MSG Entertainment and MSGN) for financing services and the amount of compensation received by Morgan Stanley for financial advisory services to the MSGN Special Committee in connection with prior discussions involving a strategic transaction with MSG Entertainment.

37. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38. The omission of this material information renders the statements in the "Summary of LionTree and Morgan Stanley Financial Analyses" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of MSGN will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or

omitted material facts, including material information about the Company's financial projections and the financial analyses performed by the Company's financial advisor. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

44. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46. Plaintiff repeats all previous allegations as if set forth in full.

47. The Individual Defendants acted as controlling persons of MSGN within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MSGN, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements

or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, MSGN's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of MSGN, and against defendants, as follows:

    A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material

information identified above to MSGN stockholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 24, 2021         **LONG LAW, LLC**

            By */s/ Brian D. Long*
              Brian D. Long (#4347)
              3828 Kennett Pike, Suite 208
              Wilmington, DE 19807
              Telephone: (302) 729-9100
              Email: BDLong@longlawde.com

              *Attorneys for Plaintiff*